FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

98 DEC 31 PM 2: 37

U.S. DISTRICT COURT
N.D. OF ALABAMA

YOLANDA MACK, )
    Plaintiff; )
       )
-vs.- ) No. CV97-P-1818-S
       )
SHONEY'S, INC. and ANTHONY HENRY, )
    Defendants. )

ENTERED

## OPINION

DEC 31 1998

The defendants' Motions for Summary Judgment were considered at the July 31, 1998 motion docket. For the reasons expressed herein, Shoney's motion is due to be granted. Because the court declines to exercise jurisdiction over the state law claims against Henry, his motion is due to be denied.

### Facts[1]

The plaintiff, an African American woman, began working at Shoney's Forestdale Captain D's in May 1996. Although she was hired as a crew leader, she was promoted several weeks later to Dining Room Manager. On July 22, 1996 the plaintiff and an assistant manager were transferred to the Centerpoint Captain D's. Anthony Henry was the Centerpoint General Manager.

During the four weeks that the plaintiff worked at the Centerpoint store, Henry allegedly engaged in unwelcome sexual conduct. The plaintiff alleges that Henry told her she was too uptight and "wasn't getting any," she had an hourglass figure and a "fine ass," and he did not mind paying for sex. The plaintiff also alleges that Henry licked his lips as if simulating oral sex, grabbed her breast and other areas, grabbed himself in front of others, asked her to sleep with him, and pulled a button off

---

[1] The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.



her shirt after picking her up and carrying her into the dining area. In response to these incidents, the plaintiff would tell Henry that she was not in a playing mood or that his behavior was not cute. One time she politely hit him and on several occasions she was so upset that she had to go to the restroom to compose herself.

Shoney's has a formal policy prohibiting sexual harassment. An employee can call a toll-free hotline to report harassment or contact the alleged harasser's superior. The plaintiff never used the toll-free hotline to report Henry's alleged conduct. The plaintiff contacted Shoney's Birmingham corporate office to speak to Cortez Walker, Captain D's Regional Director. She met with Walker and complained that Henry and another employee were making loud, rude, and vulgar comments in front of customers. The plaintiff did not mention specific comments that Henry made or the alleged touching incidents. The plaintiff testified that she did not tell Walker about the incidents because Henry claimed they were accidental. Walker told her that he would talk to Henry about his behavior. Although the touchings stopped thereafter, the comments did not.

On August 21, 1996 Cortez Walker terminated the plaintiff's employment for violation of cash handling procedures. Because of confusion regarding log-in numbers, the plaintiff's register had more cash in it than it should have that evening. Another employee's register had a cash shortage, but the differences in the registers did not match. Both employees were terminated. At the time of her termination, the plaintiff told Walker that Henry had made rude, off-color remarks and had sexually harassed her. Although Walker maintains that he spoke to Henry about the plaintiff's allegations and reiterated Shoney's anti-harassment policy, Henry testified that Walker never spoke to him about a sexual harassment complaint. Henry left Shoney's shortly thereafter for other employment.

The plaintiff timely filed an EEOC charge and then brought this action on July 17, 1997.

2

Initially, the plaintiff alleged claims against Shoney's under Title VII for hostile work environment and quid pro quo sexual harassment, retaliation, and discriminatory termination, and under state law theories of invasion of privacy and battery. The plaintiff alleged claims against Henry of invasion of privacy and battery. The plaintiff filed an amended complaint adding a claim of negligent and wanton hiring, supervision, training, and retention against Shoney's. In her response brief, the plaintiff stipulated to the dismissal of several claims, leaving her claims against Shoney's for 1) hostile environment sexual harassment; 2) invasion of privacy; and 3) negligent and wanton hiring, supervision, and retention, and against Henry for 1) invasion of privacy; and 2) battery. On July 6, 1998 the court granted leave to Shoney's to amend its answer to assert the affirmative defense outlined in *Burlington Industries, Inc. v. Ellerth*[2] and *Faragher v. City of Boca Raton*.[3]

**Analysis**

I. Shoney's

    A. Hostile Work Environment

Citing the Supreme Court's recent decisions in *Faragher* and *Burlington Industries*, Shoney's argues that its motion for summary judgment is due to be granted because it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and because the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities or to avoid harm.[4] As support for

---

[2] 118 S. Ct. 2257 (1998).

[3] 118 S. Ct. 2275 (1998).

[4] The plaintiff concedes the applicability of the affirmative defense in her response brief, pointing out that her stipulation as to her termination claim removed any contention of a tangible employment action.

3

its defense, Shoney's first points to its publicized policy against sexual harassment that includes reporting mechanisms and a toll-free hotline. In response, the plaintiff asserts that Shoney's anti-harassment policy was not properly promulgated because the plaintiff never saw the hotline poster in the Centerpoint store. However, the plaintiff did see the poster in the Forestdale store and knew that the company had a toll-free hotline to call to report a manager's or supervisor's misconduct. Additionally, the plaintiff knew she could complain to the Regional Director and in fact did speak to Walker about Henry's language. The court finds that Shoney's policy demonstrates reasonable care to prevent and correct promptly sexually harassing behavior.

Shoney's next maintains that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Shoney's because she did not use the hotline and because she did not report the instances of alleged sexual harassment to Walker before her termination. Although the plaintiff testified she did not feel comfortable telling Walker about specific incidents, she could have had a private, confidential, and detailed conversation with a hotline assistant. Only after Walker notified her that she was being terminated did the plaintiff complain of harassment. Because the court believes that the plaintiff unreasonably failed to take advantage of Shoney's reporting mechanisms, the *Faragher* and *Burlington Industries* defense applies. Shoney's motion for summary judgment as to the hostile work environment claim is therefore due to be granted.

B. Negligent or Wanton Hiring/Supervision/Training/Retention

In support of her negligent hiring claim, the plaintiff points to Henry's testimony that he had been accused of sexual harassment on at least two occasions before he began working for Shoney's.

4

Although the plaintiff alleges that Shoney's[5] did not perform an adequate background check when it hired Henry, the plaintiff has not offered any evidence to rebut Henry's testimony that the allegations had been dropped after investigations revealed no sexual harassment. The plaintiff has not demonstrated that Shoney's should have doubted Henry's explanation of the prior accusations or his reasons for leaving prior employment. Because Shoney's decision to rehire Henry was based on his past work experience with Captain D's and other fast food businesses, the claim for negligent hiring must fail.

To establish negligent supervision, a plaintiff must offer proof that the employer knew of the employee's alleged incompetence or would have discovered it if the employer had exercised proper diligence and care.[6] The proof can be specific acts of incompetency brought to the attention of the employer or acts of such frequency, character, and nature that the employer must have known about them.[7] Although the plaintiff in this case argues that Shoney's knew or should have known of Henry's sexual harassment based on the plaintiff's use of the words "nasty" and "vulgar" in her first conversation with Walker, the evidence establishes that the complaint focused on loud and rude comments in front of customers and not on alleged sexual harassment. The plaintiff has failed to offer proof that Shoney's knew or should have known of the alleged sexual harassment before her termination.

---

[5] Henry was hired by Anthony Horn, the Area Director, whose wife was one of Henry's relatives. Henry testified that Horn's knowledge of Henry's work experience came from their personal acquaintance. Horn's affidavit recites that Horn has never heard anyone complain about Henry's personal conduct.

[6] See Mardis v. Robbins Tire & Rubber Co., 669 So. 2d 885, 889 (Ala. 1995).

[7] See id.

5

To establish negligent retention, a plaintiff must show that the employer breached its duty to avoid retaining employees whom it knows or should know are ill-suited to deal with customers or others.[8] Because the evidence does not establish that Shoney's knew or should have known of Henry's alleged sexual harassment, the plaintiff's claim for negligent retention must fail.

The plaintiff also claims that Shoney's negligently trained Henry because Henry could not recall a definition of sexual harassment at his deposition and received no training after his initial management training. However, Henry testified that he did receive training on the company's anti-harassment policy, the methods for reporting it, and the consequences of engaging in it. Because no evidence supports the plaintiff's claim of negligent training, Shoney's motion for summary judgment is due to be granted.

C. Invasion of Privacy

Under Alabama law, an employer can be liable for the intentional torts of an employee if they were committed in the line and scope of employment, if they furthered the employer's business, or if the employer participated in, authorized, or ratified the wrongful acts.[9] To be outside the line and scope of employment, the acts must be motivated by wholly personal reasons.[10] The sexual misconduct that the plaintiff alleges was personal and not within the line and scope of Henry's employment. Additionally, the alleged misconduct did not further Shoney's business. The alleged comments and

---

[8]*See Brown v. Vanity Fair Mills, Inc.*, 277 So. 2d 893, 894 (Ala. 1973).

[9]*See Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 755 (11th Cir. 1996); *Joyner v. AAA Cooper Transp.*, 477 So. 2d 364, 365 (Ala. 1985).

[10]*See Doe v. Swift*, 570 So. 2d 1209, 1211 (Ala. 1990).

6

touchings served no business purpose and were impelled by only personal motives. Shoney's therefore cannot be vicariously liable for invasion of privacy based on the alleged sexual harassment.

Additionally, this court finds no evidence that Shoney's authorized, ratified, or participated in the alleged misconduct. Shoney's did not have actual knowledge of Henry's conduct until the plaintiff told Walker at her termination about the alleged touchings and comments. The plaintiff argues that Shoney's ratified Henry's conduct because Henry claims Walker never talked to him about a complaint of sexual harassment. However, Shoney's did not receive a complaint that specified misconduct of a sexual nature until after the plaintiff was terminated for reasons apparently unrelated to any alleged harassment. Additionally, Walker's notes reflect that he did speak to Henry and another manager about the plaintiff's general allegations of harassment. The plaintiff also contends that Shoney's ratified Henry's conduct because Walker testified that the plaintiff's allegations, made after her termination, were less credible than they would have been if raised during her employment. However, Walker also testified that he was concerned that the plaintiff's allegations were true and did not immediately form an opinion as to the truth of her complaints. Because the evidence demonstrates that Shoney's did not authorize, ratify, or participate in the alleged misconduct, Shoney's cannot be directly liable for any invasion of privacy committed by Henry. Shoney's motion for summary judgment as to the invasion of privacy claim is therefore due to be granted.

II. Anthony Henry

As all claims over which this court has original jurisdiction are due to be dismissed, the court declines to exercise supplemental jurisdiction over the state law claims against Henry. Thus, Henry's motion for summary judgment is due to be denied. The court directs the plaintiff's attention to 28

7

U.S.C. § 1367 (d) concerning tolling of the limitations period.

### Conclusion

Because the court finds no genuine issues of material fact with respect to the plaintiff's claims against Shoney's, Shoney's motion for summary judgment is due to be granted. Because the court declines to exercise jurisdiction over the plaintiff's claims against Henry, Henry's motion for summary judgment is due to be denied.

Dated: Dec. 30, 1998

_____
Chief Judge Sam C. Pointer, Jr.

Service List
    Christa H. Meelheim
    Jay St. Clair
    Amy K. Myers
    Ann McMahan